## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                      **Case No. 08-CR-244**

**PAUL STABELL**
        **Defendant.**

### SENTENCING MEMORANDUM

Defendant Paul Stabell pleaded guilty to attempted distribution of child pornography, contrary to 18 U.S.C. § 2252(a)(2), and I ordered a pre-sentence report ("PSR") in anticipation of sentencing. The PSR recommended a base offense level of 22 under the sentencing guidelines, U.S.S.G. § 2G2.2(a)(2), along with enhancements of 2 levels because the material involved a minor who had not attained the age of 12 years, § 2G2.2(b)(2), 2 levels because the offense involved the use of a computer, § 2G2.2(b)(6), and 5 levels because the offense involved 600 or more images, § 2G2.2(b)(7)(D). Following a 3 level reduction for acceptance of responsibility, § 3E1.1, and coupled with defendant's criminal history category of I, the PSR recommended a guideline range of 78-87 months. I found these guideline calculations correct and adopted them without objection.

### I. SENTENCING FACTORS

In imposing the actual sentence, I turned to the factors set forth in 18 U.S.C. § 3553(a):

(1)    the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant. § 3553(a)(2).

The Supreme Court has stated that while the guidelines will generally be the starting point and the initial benchmark in making this determination, the district court may not presume that the guideline sentence is the correct one. Nelson v. United States, 129 S. Ct. 890, 892 (2009); Gall v. United States, 128 S. Ct. 586, 596-97 (2007); Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Rather, the court must independently determine an appropriate sentence based on all of the circumstances of the case and under all of the § 3553(a) factors. See Gall, 128 S. Ct. at 596-97; United States v. Carter, 530 F.3d 565, 578 (7th Cir.), cert. denied, 129 S. Ct. 474 (2008); United States v. Taylor, 586 F. Supp. 2d 1065, 1068 (E.D. Wis. 2008). The Justices have also made clear that district courts are free to reject the advice of guidelines that

2

do not reflect the Sentencing Commission's exercise of its "characteristic institutional role." See Kimbrough v. United States, 128 S. Ct. 558, 563 (2007); see also Spears v. United States, 129 S. Ct. 840 (2009); Moore v. United States, 129 S. Ct. 4 (2008).

## II. DISCUSSION

### A. The Offense

The instant prosecution arose out of an internet investigation into users of peer-to-peer file sharing software called "Gnutella." This software facilitates the trading of images and other types of files, including videos. Once installed, it permits the user to search for pictures, movies or other digital files, and then receive files from other users around the world. Users can also place their files in a shared file directory, allowing other users to access them.

In this case, the investigating detective was able to obtain the IP addresses of computers participating in the sharing of previously identified child pornography, one of which was determined to be located at defendant's address. Three offending files were displayed as available on defendant's computer.

Agents executed a search warrant at defendant's house, seizing computers containing over 800 files of child pornography. Defendant admitted to the executing agents that all of the images were his, not his partner's. Defendant further indicated that he was a writer and wanted to create a screen play on child pornography, so he downloaded child pornography as a form of research. However, he admitted that he collected too much and should have gotten rid of it. In a later post-arrest statement, defendant admitted downloading and file sharing movies containing child pornography. He stated that he only used the software to download images, but he knew that the images in the shared folder on his computer were available for others to

3

download.

**B.     The Defendant**

At thirty-seven years old, defendant had no prior record. Aside from this matter, he had behaved in a pro-social manner, graduating from high school and obtaining an associate's degree from UW-Waukesha and a bachelor's degree from UW-Milwaukee. He also compiled a solid employment record, as set forth in ¶¶ 84-89 of the PSR.

However, as seems to be the case with many defendants charged with this crime, defendant reported sexual abuse as a child, by an older step-brother who also abused other siblings. Defendant battled depression since his teen years, for which he received some limited treatment in 1987 and again in 1999. On November 8, 2000, defendant attempted suicide, and he again received some limited treatment through the Waukesha County Mental Health Center. After this offense came to light, defendant saw Dr. Michael Kotkin from August to October 2008, for which he paid out of pocket. Although he was unable to continue that treatment due to lack of funds, his comments detailed in the PSR revealed that he had gained insight into his problems, in particular how his childhood abuse affected his behavior today. (PSR ¶ 74.) Dr. Kotkin's treatment notes indicated that by viewing child pornography defendant was re-living what happened to him as a child. Dr. Kotkin told the PSR writer that defendant was engaged, acknowledged his compulsions and would likely benefit from future counseling. In his letter to the court and in his sentencing allocution, defendant expressed genuine remorse and understanding of how his conduct hurt the children depicted in the images.

Despite his arrest in this matter, defendant retained significant community support. He had been in a relationship for the past four years, and his partner remained supportive. I received numerous positive letters from others. His sister Trixie wrote that he is honest, caring

4

and generous, volunteering at an AIDS clinic. She indicated that he spent a lot of time with her sons, and she had no concerns about his conduct with them. His sister Deborah also made positive statements and confirmed the sexual abuse by their step-brother. She also indicated no discomfort in having defendant around her children. Defendant's friend Marybeth wrote of his generous nature and about how she assisted her during cancer treatment. The manager of the HIV clinic where defendant volunteered also provided a positive letter. A large gallery of supporters appeared at sentencing. In sum, defendant appeared as a person with many positive qualities and a solid support structure awaiting him after he finished his sentence.

**C.    The Sentence**

Congress has set forth a penalty range of 5-20 years for distribution of child pornography, 18 U.S.C. § 2252(b)(1), and nothing in § 3553(a) or United States v. Booker, 543 U.S. 220 (2005) provides the district court with authority to sentence outside such statutory confines. See, e.g., United States v. James, 487 F.3d 518, 530 (7th Cir. 2007). But the sentencing guidelines are advisory only and thus may be trumped by the district court's § 3553(a) analysis. Further, as district judges across the country have recognized, the guideline for child pornography offenses is seriously flawed, does not reflect the Sentencing Commission's exercise of its characteristic institutional role, and is accordingly entitled to little respect. See, e.g., United States v. Beiermann, No. CR 07-4018, 2009 WL 467628, at *10 (N.D. Iowa Feb. 24, 2009) (collecting cases); United States v. Phinney, No. 08-CR-260, 2009 WL 425816, at *3 (E.D. Wis. Feb. 20, 2009) (collecting cases).

I cataloged many of these flaws in United States v. Hanson, 561 F. Supp. 2d 1004, 1008-011 (E.D. Wis. 2008), and found it unnecessary to repeat all of those criticisms in this case. In general, the guideline range in child pornography cases has steadily been increased

5

based largely on congressional directives ostensibly targeting hands-on abusers of children and those who produce child pornography for profit, even though most defendants who appear in federal court do not fit into these categories. As is pertinent to the specific guideline range applicable in this case, I noted four serious flaws.

First, defendant's base offense level of 22 was derived not from Commission study or research, but rather an attempt to keep pace with the increased statutory penalties adopted by Congress. Hanson, 561 F. Supp. 2d at 1010. Second, defendant received a 2-level increase for use of a computer, yet as the Commission itself has noted, this enhancement makes little sense because online pornography comes from the same pool of images found in specialty magazines or adult bookstores. Further, the enhancement fails to distinguish between different types of computer use or to link such use to the two potential harms at issue – more widespread distribution or an increase in the likelihood that children will be exposed; rather, it applies in virtually every case. See Phinney, 2009 WL 425816, at *5; Hanson, 561 F. Supp. 2d at 1010. Third, and similarly, the enhancement for depiction of a child under the age of 12 applies in virtually every case. See Phinney, 2009 WL 425816, at *5; Hanson, 561 F. Supp. 2d at 1009. Finally, defendant received a 5-level enhancement for number of images, an enhancement also supported by no research, study or rationale. Because defendants can via the internet readily obtain the 600 or more images needed for the enhancement, it also represents a flawed measure of culpability. See Hanson, 561 F. Supp. 2d at 1010. Thus, every component of the offense level applicable to this case suffered from significant flaws.

I also found that the guidelines did not account for the significant positives in defendant's character and background, facts I had to consider under § 3553(a)(1). First, in addition to his lack of any prior criminal record, defendant compiled a solid record of employment,

6

Case 2:08-cr-00244-LA   Filed 03/19/09   Page 6 of 8   Document 21

volunteering and good works. Second, he had in place a solid support structure, which would assist him in re-integrating into the community on release. Third, the record contained no indication that defendant had or was inclined to commit a contact offense. Fourth, he complied with all conditions of pre-trial release during the pendency of this matter, which revealed him to be a good candidate for supervision in the community. Fifth, he fully cooperated throughout this process, admitting his guilt to the agents at the time of arrest and in this court.

Finally, I found that defendant's conduct in this instance was not motivated by profit or even solely by prurient interest. Rather, he was by viewing these images re-living the abuse he experienced as a child. With further counseling, it seemed likely that he would find more appropriate means of coping with his own abuse. As indicated above, he seemed to have acquired insight into his situation through the counseling he had obtained. I required further counseling as a condition of supervision.

For all of these reasons, I found that a sentence at the statutory minimum, followed by a substantial period of supervision, would suffice to deter and protect the public. See 18 U.S.C. § 3553(a)(2)(B) & (C). I also found 60 months sufficient to provide just punishment given the nature of defendant's conduct and his motivation. See 18 U.S.C. § 3553(a)(2)(A). This sentence varied from the guidelines by a little more than 2 levels, and because it was based on the particular facts of the case as discussed herein, it created no unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

### III.  CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 60 months. Upon release, I ordered him to serve 7 years of supervised release. The statutory supervision range in child pornography cases is 5 years to life, 18 U.S.C. § 3583(k), and the guidelines

7

recommend consideration of a life term, U.S.S.G. § 5D1.2(b). I found a period above the minimum warranted to ensure that defendant was monitored and received treatment, regardless of his financial situation. But for the reasons stated herein, a life term was not necessary to deter, protect the public or provide for treatment. As conditions of supervision, I imposed computer restrictions; required mental health treatment; prohibited possession of sexually explicit material; required defendant to provide access to all financial information; and, in lieu of a fine, ordered defendant to perform 10 hours of community service work per year, for a total number of 70 hours. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 19th day of March, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge